# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| WILLIAM LAWSON, JOE TRIPODI, THOMAS WHITTINGTON, JASON PHILLIPS, AND NESBIT B. ("BRAD") SILLS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action File No. 1:09-cv-3528-JEC |
| v. | ) | |
| BELLSOUTH TELECOMMUNICATIONS, INC., d/b/a AT&T SOUTHEAST a.k.a. AT&T ALABAMA/AT&T FLORIDA/AT&T GEORGIA/ AT&T KENTUCKY/AT&T LOUISIANA/AT&T MISSISSIPPI/AT&T NORTH CAROLINA, AT&T SOUTH CAROLINA/AT&T TENNESSEE, | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| *Defendant*. | ) ) | |

## JOINT MOTION FOR SETTLEMENT APPROVAL

Plaintiffs William Lawson, Joe Tripodi, Thomas Whittington, Jason Phillips, Nesbit B. Sills, and the opt-in Plaintiffs ("Plaintiffs") and Defendant BellSouth Telecommunications, Inc. ("Defendant" or "BellSouth") hereby jointly move for approval of their Settlement Agreement and their Notice of Settlement for mailing to the class members.  As set forth in the attached Memorandum, the Settlement Agreement is fair and reasonable and meets the applicable standards for settlement under the Fair Labor Standards Act.

WHEREFORE, Plaintiffs and Defendant respectfully request that the Court approve the Settlement Agreement and Notice of Settlement to the class members.

Respectfully and jointly submitted,

By:  /s/ David Sanford
David Sanford
DC Bar No. 457933
dsanford@sanfordheisler.com
SANFORD HEISLER, LLP
1666 Connecticut Avenue NW
Suite 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199

Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleyklein.com
BUCKLEY & KLEIN, LLP
Promenade II, Suite 900
1230 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101

Edmond Clark
eclarkmadisonlaw@aol.com
Law Office of Edmond Clark
83 Scotland Avenue
Madison, Connecticut 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734

Attorneys for Plaintiffs


Date:  April 5, 2013

By:  /s/  William C. Barker
William C. Barker
Georgia Bar No. 037727
PAUL HASTINGS, LLP
1170 Peachtree Street, N.E.
Suite 100
Atlanta, GA  30309
Telephone:  (404) 815-2400
Facsimile:   (404) 815-2424

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| WILLIAM LAWSON, JOE TRIPODI, THOMAS WHITTINGTON, JASON PHILLIPS, AND NESBIT B. ("BRAD") SILLS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action File No. 1:09-cv-3528-JEC |
| v. | ) ) | |
| BELLSOUTH TELECOMMUNICATIONS, INC., d/b/a AT&T SOUTHEAST a.k.a. AT&T ALABAMA/AT&T FLORIDA/AT&T GEORGIA/ AT&T KENTUCKY/AT&T LOUISIANA/AT&T MISSISSIPPI/AT&T NORTH CAROLINA, AT&T SOUTH CAROLINA/AT&T TENNESSEE, | ) ) ) ) ) ) ) | |
| *Defendant*. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR SETTLEMENT APPROVAL

## INTRODUCTION

In this overtime collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), 661 current and former "Field Managers" employed by Defendant BellSouth move without opposition for approval of an $8,129,675 class-wide settlement. *Lawson* is one of three Field Manager misclassification suits filed against Defendant and its corporate affiliates in three separate jurisdictions.[1] Now, after three years of hard-fought litigation in *Lawson*, the parties have reached a settlement that provides monetary payments to the more than 2,000 Field Managers whose claims are covered by the three lawsuits. The settlement was facilitated by a highly-experienced employment mediator, David Rotman of Gregorio Haldeman Rotman in San Francisco.

$8,129,675 in settlement funds will be allocated to the 661 members of the *Lawson* FLSA opt-in class. Plaintiffs estimate that the settlement represents approximately one-third of their reasonable maximum damages, and **more than 200%** of one of the distinctly possible damages outcomes – assuming a finding in Plaintiffs' favor on liability. This settlement is fair and reasonable under the circumstances and therefore warrants judicial approval. This settlement must also be evaluated in light of the October 2011 trial in *Perkins v. SNET*, one of the other

---

[1] The other two suits are *Perkins v. S. New Eng. Tel. Co*, No. 3:07-cv-956 (D. Conn) and *Luque v. AT&T Corp.,* No. 3:09-cv-5885 (N.D. Cal.).

Field Manager suits, where the jury issued a verdict against the Field Managers on liability.  Further bolstering the case for approval here is that, on November 19, 2012, Judge Charles Breyer of the Northern District of California preliminarily approved the portion of the settlement applicable to the settlement class of Field Managers in California.  (*See* Ex. A)  In doing so, Judge Breyer applied the more stringent Rule 23(e) standard applicable to class action settlements; collective action settlements under 29 U.S.C. § 216(b) do not involve the rights of absent class members and are therefore reviewed with less scrutiny.

The parties therefore respectfully move this Court for approval of the parties' Settlement Agreement and approval of the parties' Notice of Settlement for mailing to the class members.

## FACTUAL AND PROCEDURAL HISTORY

The named and opt-in Plaintiffs in this case are current and former Field Managers who worked for BellSouth between December 19, 2006 and September 6, 2011 – the date that the judicially approved notice list was prepared. Plaintiffs allege that they have been improperly denied overtime compensation because the company allegedly misclassified them as exempt managerial employees in violation of the FLSA. Whether the Field Managers are entitled to overtime compensation; the number of overtime hours they have worked and amount of overtime compensation to which they would be entitled if successful on liability;

2

and whether they may proceed in a collective action are all hotly contested issues whose outcomes remain greatly uncertain. Defendant's primary defense on liability is that Plaintiffs – who have, on average, approximately 15 subordinates reporting to them – are not entitled to overtime under the executive exemption of the FLSA.

The Field Manager cases against Defendant and its corporate affiliates began more than five years ago. In May and July 2007, two employees filed class-based wage claims with the Connecticut Department of Labor against a separate AT&T subsidiary, the Southern New England Telephone Company ("SNET"). On June 21, 2007, the initial complaint was filed in *Perkins v. SNET*, 3:07-cv-967 ("*Perkins*" or "*SNET*"). After plaintiffs survived a motion to dismiss, the case proceeded to discovery – which consisted of approximately 60 depositions, the exchange of millions of pages of data and documents, and numerous interrogatories propounded by both sides. During this process, Field Managers across the country contacted class counsel wishing to participate in the suit or to bring their own separate action.

In November 2009, the *Perkins* court certified the FLSA allegations under 29 U.S.C. § 216(b) and the Connecticut law overtime claims under Fed. R. Civ. P. 23(b)(3).  *See Perkins v. S. New Eng. Tel. Co.*, 669 F. Supp.2d 212 (D. Conn. 2009).   Thereafter, in December 2009, Class Counsel filed two additional misclassification cases on behalf of classes of Field Managers – the present

*Lawson* action and *Luque v. AT&T Corp.,* No. 3:09-cv-5885 (N.D. Cal.). The accompanying Joint Declaration of Class Counsel sets forth in detail the history of the litigation in *Lawson* leading to this settlement, which we summarize below.

On May 14, 2010, the *Lawson* Plaintiffs moved for conditional certification of a collective action under § 216(b) of the FLSA on behalf of BellSouth Field Managers. (Doc. 27). Subsequently, the parties engaged in extensive pre-conditional certification discovery including the exchange of multiple rounds of written discovery requests and responses and the depositions of ten opt-in Plaintiffs. On August 16, 2011, this Court granted conditional certification under § 216(b). *See Lawson v. BellSouth Telecomms., Inc*., 2011 U.S. Dist. LEXIS 91322 (N.D. Ga. Aug. 16, 2011). After class counsel sent the Court-approved notice, over six hundred additional eligible Field Managers opted into the FLSA collective action in this case.

In September 2011, in advance of the pending trial in *Perkins* and in the midst of extensive class certification fact discovery in the other Field Manager cases, the parties engaged in their first mediation before veteran mediator David Rotman in San Francisco to attempt to achieve a global resolution of the three cases. The mediation was unsuccessful.

In October 2011, following extensive pretrial proceedings the *Perkins* matter proceeded to a three-week jury trial on the issue of liability alone. The        jury

found in the company's favor under both the FLSA and Connecticut wage and hour laws.  Plaintiffs then filed post-trial motions under Fed. R. Civ. P. 50(b) and 59, which were denied in their entirety by the trial court.  *See Perkins v. S. New Eng. Tel. Co.*, 2012 U.S. Dist. LEXIS 18943 (D. Conn. Feb. 14, 2012).  The *Perkins* plaintiffs have appealed to the United States Court of Appeals for the Second Circuit.  The appeal is currently in abeyance pending the approval of the settlements in the three cases.

On April 19, 2012, with post-conditional certification discovery heating up in *Lawson*; with intensive class discovery proceeding on multiple tracks in the *Luque* case and the deadline for the *Luque* Plaintiffs' Rule 23 class certification motion rapidly approaching; and with the *Perkins* appeal pending, the parties participated in a second full-day mediation before mediator Rotman. After many hours of intense arm's-length negotiations, facilitated by Mr. Rotman, the parties reached an agreement in principle to settle all three cases and executed a term sheet.  Since the second mediation, the parties have spent substantial additional time negotiating and finalizing the details of the settlement and analyzing the employment history data of the class members and opt-in plaintiffs eligible to receive settlement benefits in the three cases.

On November 19, 2012, Judge Charles R. Breyer of the Northern District of California preliminarily approved the portion of the settlement applicable to the

Field Managers in the *Luque* case.[2]   The parties then distributed notice to the *Luque* class members.  After receiving the Notice, 1,196 Field Managers (or 84% of the class) submitted claim forms to participate in the settlement[3] and there were no objections to any aspect of the settlement including the attorney's fees and service payments.

## THE SETTLEMENT

The settlement negotiated by the parties includes the following class relief:

-$8,129,675 in monetary benefits to the 661 *Lawson* plaintiffs.   The settlement amount allocated to the 661-member *Lawson* opt-in class was derived by apportioning the $27,050,000 in settlement funds allocated to the *Lawson* and *Luque* cases based on the number of workweeks worked by putative class members in Field Manager jobs in the respective lawsuits.  Given the substantially greater number of class members in the *Luque* case (over 1,400) and the longer statute of limitations under California state law (roughly six years for all class

---

[2] Because the *Luque* case also involves California statutory claims brought on behalf of a Rule 23 state law class, a two-stage settlement approval process is required under Rule 23(e).  Here, however, there are no absent class members; pursuant to 29 U.S.C. § 216(b) only those employees who have affirmatively opted into the action as party plaintiffs and elected to be represented by Class Counsel are part of the case and have their rights at stake in this litigation. Moreover, under the settlement agreement in this case, any plaintiff who does not execute and submit a claim form, including a waiver and release of claims, is not bound by the settlement and will be effectively exercising a right to opt-out of the action and may pursue individual claims. Only those plaintiffs who individually sign on to the settlement by filing their claim forms will have their rights affected in any way.  This plainly satisfies the requirements of due process, as a two-stage procedure is not mandated for the approval of FLSA settlements.
[3] Of the 1,196 claim forms submitted, 14 claim forms were submitted after the deadline and 12 claim forms are presently incomplete.

members), the bulk of the proposed settlement fund has been allocated to the *Luque* class.

-Plaintiffs will be assigned a *pro rata* share of the settlement to be calculated based upon the number of weeks they worked in a class position during the applicable limitations period.  In order to receive these payments they must sign a release and other settlement documents.[4]  Plaintiffs who do not execute the required documents will not receive a payment and their claims will not be released.

-Out of the settlement funds, Plaintiffs will seek modest service awards of $2,500 to $10,000 ($62,500 in the aggregate) to the five named Plaintiffs and five Field Manager deponents whose participation substantially contributed to the prosecution of the case. The aggregate service payments represent less than 1% of the total settlement amount.

-The Settlement Agreement provides that Class Counsel will apply for attorney's fees and reimbursement of litigation expenses and costs in a combined amount that does not exceed 33.33% of the settlement. Here, Counsel seeks reimbursement of  $71,936.80 in expenses and further seeks a 30% fee or $2,438,902; in total, counsel seeks 30.88% of the available settlement fund.

---

[4] These documents include a job affirmation describing the duties of the various Field Manager positions and an agreement by the employee to arbitrate future claims against the company.  The parties note that many of the opt-in class members are already subject to an arbitration clause or are former employees.

<u>**ARGUMENT**</u>

**A. <u>General Considerations</u>**

In this Circuit and nationwide, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977). *See also Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.") Accordingly, there is "strong presumption in favor of finding a settlement fair." *See, e.g., Wingrove v. D.A. Techs., Inc.*, 2011 U.S. Dist. LEXIS 153759, at *5 (N.D. Ga. Feb. 11, 2011); *Edwards v. CFI Sales & Mkt., Inc.*, 2011 U.S. Dist. LEXIS 134705 (M.D. Fla. Nov. 4, 2011); *Ferguson v. Upscale Saturday Night, Inc.*, 2006 U.S. Dist. LEXIS 63663, at *2-3 (M.D. Fla. Sept. 6, 2006); *Altier v. Worley Catastrophe Response, LLC*, 2012 U.S. Dist. LEXIS 6391, at *45 (E.D. La. Jan. 18, 2012).

The primary purpose of reviewing an FLSA settlement for fairness "is to ensure that an employer does not take advantage of an employee in settling his claim for wages." *Ferguson*, 2006 U.S. Dist. LEXIS 63663, at *6; *Altier*, 2012 U.S. Dist. LEXIS 6391, at *43. But this concern is minimized when the employees are represented by counsel in adversarial proceedings. "Typically, courts regard

the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *13 (E.D.N.Y. Feb. 18, 2011).

After years of vigorous litigation, the parties in *Lawson* have reached a fair and reasonable resolution of a complex and protracted wage and hour collective action that follows on the heels of an unsuccessful trial in Connecticut federal court on virtually the same issues as in *Lawson*. Given the uncertainty that the *Lawson* class would face in further litigation, the present settlement ensures that the class will receive material and immediate benefits. The settlement in this case meets all the criteria for approval and should be approved.

## I.  The Court Should Approve the Settlement Under the FLSA

Although an FLSA settlement does not involve the rights of absent class members and is not subject to Fed. R. Civ. P. 23(e), the Eleventh Circuit has held that court approval is required under the FLSA and that approval should be granted where the settlement is fair and reasonable. *See, e.g.*, 29 U.S.C. §§ 216(b), 256; *Lynn's Food Stores, Inc.*, 679 F.2d at 1353; *Hosier*, 2012 U.S. Dist. LEXIS 94958, at *9-11; *Altier*, 2012 U.S. Dist. LEXIS 6391, at *43-45; *Lee v. Timberland Co.*, 2008 U.S. Dist. LEXIS 108098 (N.D. Cal. June 18, 2008); *Campanelli*, 2011 U.S. Dist. LEXIS 93166; *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *9 (S.D.N.Y. May 28, 2009); *Willix*, 2011 U.S. Dist. LEXIS 21102, at *13-14.

9

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Willix*, 2011 U.S. Dist. LEXIS 21102, at *13.  As set forth in cases such as these, an FLSA settlement need only reflect a reasonable compromise of contested litigation involving a *bona fide* dispute between the parties.  *See, e.g., Lynn's Food Stores*, 679 F.2d at 1353-55; *Hosier*, 2012 U.S. Dist. LEXIS 94958, at *9-11; *Perry v. M/I Homes, Inc.*, 2010 U.S. Dist. LEXIS 52703, at *7 (M.D. Fla. Feb. 12, 2010).

The adversarial nature of the *Lawson* case satisfies this Circuit's criteria for settlement approval. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Willix*, 2011 U.S. Dist. LEXIS 21102, at *13. The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354.  This context ensures "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.*  *See also Ibanez v. Marriot Ownership Resorts, Inc.*, 2012 U.S. Dist. LEXIS 69548, at *2 (M.D. Fla. Apr. 24, 2012).

### A. **There is Plainly a *Bona Fide* Dispute in this Case**

10

In the FLSA context, a disagreement over "hours worked or compensation due clearly establishes a bona fide dispute."  The existence of such a dispute is underscored by "institution of federal court litigation followed by aggressive prosecution and strenuous defense." *Altier*, 2012 U.S. Dist. LEXIS 6391, at *46-47.  *See also Lynn's Food Stores*, 679 F.2d at 1354.  Here, the parties plainly have *bona fide* disputes over (i) the FLSA's coverage – whether plaintiffs and the class members qualify for the executive exemption and are entitled to overtime pay; (ii) the number of overtime hours they worked during the class period and the amount of overtime pay they are owed if they prevail on liability; (iii) the applicability of the fluctuating workweek method of calculating overtime; (iv) the applicable statute of limitations under 29 U.S.C. § 255, as well as the availability of liquidated damages under 29 U.S.C. § 260; and (v) absent settlement, whether final certification of a collective action under the stage-two decertification standard is appropriate.  *See, e.g. Altier*, 2012 U.S. Dist. LEXIS 6391, at *46-47; *Lee*, 2008 U.S. Dist. LEXIS 108098, at *5-6.  The parties have hotly contested these issues and others over years of litigation (and have taken these issues to trial in the *Perkins* case) and would continue to do so absent a settlement.

## B. <u>The Settlement is Fair and Reasonable</u>

A finding of fairness permits settlement approval "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at

1354.   Under the circumstances, there is little question that the settlement represents a fair and reasonable compromise of contested claims.  *See, e.g*., *Hosier*, 2012 U.S. Dist. LEXIS 94958, at *9-11 ($1.6 million settlement fund for 775 claimants); *Campanelli*, 2011 U.S. Dist. LEXIS 93166, at *3 ("substantial" payments achieved through arm's length negotiations); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *9; *Willix*, 2011 U.S. Dist. LEXIS 21102, at *13-14.  In *Luque*, Judge Breyer preliminarily determined that the California-class settlement – containing the same relevant terms as the present settlement – is fair, reasonable, and adequate under the more stringent Rule 23 standard.  *See* Ex. A, ¶ 1.

Although the approval standard is lower under the FLSA than Rule 23, in an abundance of caution, courts occasionally refer to the 23(e) factors in considering the fairness and reasonableness of an FLSA collective action settlement.   These factors are: (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *See, e.g., Edwards v. CFI Sales & Mktg.*, 2011 U.S. Dist. LEXIS 134705, at *12 (M.D. Fla. Nov. 4, 2011); *see also Altier*, 2012 U.S. Dist. LEXIS 6391, at *44-45. Consideration of each of these factors supports approval of the settlement.

### 1. *The* Lawson *Settlement is the Product of Well-Informed, Arm's Length Negotiations With No Hint of Collusion*

The settlement was reached only after years of litigation, comprehensive discovery, and conditional collective action certification; analysis of extensive documents and data regarding the class and its potential damages; a trial on liability in *Perkins*; and two full-day mediations several months apart. The fact that the negotiations were overseen by an experienced mediator, David Rotman, confirms that the process was procedurally sound and not collusive.  *See, e.g., Hosier*, 2012 U.S. Dist. LEXIS 94958, at *10-11, *Signorelli v. Utiliquest, LLC*, 2008 U.S. Dist. LEXIS 117439, at *7 (M.D. Fla. Apr. 7, 2008); *Altier*, 2012 U.S. Dist. LEXIS 6391, at *47-49; *Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604, at *31-32 (E.D. Cal. May 16, 2012); *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *24-26 (N.D. Cal. Oct. 12, 2011).

### 2. *The Litigation Has Been Complex, Expensive, and Time-Consuming*

Class and collective litigation, particularly in the wage and hour context, is notably complex and is often litigated for years.  *See, e.g., Barrentine v. Arkansas Best Freight Sys.*, 450 U.S. 728, 743 (1981); *Long Island Care at Home v. Coke*, 551 U.S. 158, 167 (2007); *Altier*, 2012 U.S. Dist. LEXIS 6391, at *50-51; *Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *14 (S.D.N.Y. June 7, 2011); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005). Here, the parties have hotly contested nearly every procedural, substantive, and discovery issue throughout the Field Manager litigation. The potential for further

complex, protracted, and expensive litigation weighs in favor of settlement approval. *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559-60 (N.D. Ga. 2007)(Carnes, J.).

### 3.  *The Proceedings Reached the Advanced Stages of Trial and the Parties Completed Extensive Discovery*

This factor considers whether the parties have gathered "sufficient information to make an informed decision about the settlement." *See, e.g., Morales*, 2011 U.S. Dist. LEXIS 130604, at *29-30; *Harris*, 2011 U.S. Dist. LEXIS 48878, at *48; *Clesceri*, 2011 U.S. Dist. LEXIS 11676, at *27-28; *Lo*, 2011 U.S. Dist. LEXIS 144490, at *17-18. Here, given the advanced stage of the proceedings and the extensive discovery completed, there can be no question that this factor weighs strongly in favor of approval.  Moreover, the parties' negotiations were informed by the discovery and proceedings in the other two Field Manager cases – including a trial on the merits of the company's executive exemption defense in *Perkins* – as well as competing damages analyses conducted by the parties' respective experts.  *See, e,g*., *Columbus Drywall*, 258 F.R.D. at 560.

Furthermore, the degree to which the parties understood and litigated their positions is emphasized by the fact the case settled only after multiple mediation sessions, including two mediations that occurred seven months apart. Mediator assistance in achieving a resolution supports approval under this factor.  *See, e.g., Morales*, 2011 U.S. Dist. LEXIS 130604, at *30.  *See also Columbus Drywall*, 258

F.R.D. at 560 (settlement not premature in light of reasonable amount of discovery and fact that "negotiations have spanned well over one year"); *Chu v. Wells Fargo Invs. LLC*, 2011 U.S. Dist. LEXIS 15821, at *10 (N.D. Cal. Feb. 15, 2011) (in addition to substantial discovery, "the respective factual and legal strengths of the parties' arguments are likely to have been sufficiently fleshed out" in settlement process).

### 4. *There Are Significant Risks Regarding Plaintiffs' Ability to Succeed on the Merits*

The uncertainty of Plaintiffs' case is revealingly foreshadowed by the verdict in the *Perkins* litigation. Although Plaintiffs maintain they have meritorious claims, the *Perkins* jury returned a defense verdict on liability – finding that the class members fit within the executive exemption.  Plaintiffs and the class members face marked challenges in further litigation as it is undisputed that they: (i) each have a fairly large number of direct reports; (ii) do not generally perform the same work as their reports; and (iii) make relatively high salaries, some nearing or exceeding $100,000.[5]  There is at least a substantial risk that the company would prevail on its defenses.  *Wingrove*, 2011 U.S. Dist. LEXIS 153759 (granting settlement approval in misclassification case due to litigation risks); *Morale*s, 2011 U.S. Dist. LEXIS

---

[5] The Supreme Court's recent decision in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (June 18, 2012), also potentially signals an unfavorable legal environment for wage and hour cases brought by employees with relatively high salaries.  *See* 2012 U.S. LEXIS 4657, at *18 & n.7.  *See also id.* at *64-65 (Breyer, J., dissenting).

130604, at *26-27; *Harris*, 2011 U.S. Dist. LEXIS 48878 at *46; *Chu*, 2011 U.S. Dist. LEXIS 15821, at *10; *LaParne v. Monex Deposit Co.*, 2010 U.S. Dist. LEXIS 131029, at *9-10 (C.D. Cal. Nov. 29, 2010) (finding this factor weighed in favor of approval even where plaintiffs won partial summary judgment); *Vasquez*, 670 F. Supp.2d at 1125-26 (preliminarily approving settlement conferring substantial benefits in the face of significant risks and uncertainties).

In this action, not only is liability uncertain but also the amount of overtime wages if liability is found, the amount and propriety of liquidated damages, the applicable statute of limitations on the FLSA claims, and other questions. The potential application of the fluctuating workweek method of calculating overtime pay (*see* 29 C.F.R. § 778.114) would reduce damages by as much as 80%.

For settlement purposes, BellSouth agreed not to contest the conditionally certified collective action status. Absent this settlement, however, BellSouth would have challenged the propriety of class treatment both in a motion to decertify and through the trial (as it did in *Perkins*). The result would be far from certain. Courts have found this uncertainty factor weighs in favor of approving a class settlement. *See, e.g., Moshogiannis v. Sec. Consultants Group.*, 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Nov. 30, 2011); *Morales*, 2011 U.S. Dist. LEXIS 130604, at *27-28; *Martin*, 2011 U.S. Dist. LEXIS 61796, at *18; *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006).

In short, the settlement provides a substantial and immediate benefit to the class which is "preferable to lengthy and expensive litigation with uncertain results." *Morales*, 2011 U.S. Dist. LEXIS 130604, at 27; *Columbus Drywall*, 258 F.R.D. at 559-60; *Duran*, 2011 U.S. Dist. LEXIS 134363, at *10-11 (S.D. Cal. Mar. 30, 2011); *Martin*, 2011 U.S. Dist. LEXIS 61796, at *18.

### 5. *The Amount of Recovery is Reasonable*

The Settlement provides for an $8,129,675 monetary benefit to the members of the *Lawson* class. Following the deduction of attorney's fees and costs, each class member will receive a *pro rata* share of the settlement fund calculated based on the employee's number of weeks in a class position during the relevant liability period. There are 661 collective action Plaintiffs in the *Lawson* class, whose tenure in a class position compensable through the settlement may range up to approximately six years. Individual recoveries are expected to range up to approximately $14,500.[6] Given the high degree of risk and uncertainty involved in further litigation, as discussed above, this represents a substantial recovery supporting settlement approval. *See, e.g., Hosier*, 2012 U.S. Dist. LEXIS 94958, at *9-11 (approving $1.6 million settlement fund for 775 claimants, including attorney's fees, service payments, and other deductible costs and expenses); *Harris*, 2011 U.S. Dist. LEXIS

---

[6] This amount does not include the incentive awards sought for a number of the Class Members.

48878, at *26-27; *Williams*, 2010 U.S. Dist. LEXIS 19674, at *16.[7]

Through the $8,129,675 *Lawson* settlement, the class members will receive payments based on their length of service in a class position during the applicable liability period.   *See, e.g., Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) ("Of course, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."); *Id*. at 627-29 (rejecting objector's contention that settlement providing for maximum of $3,720 in back pay per claimant was "grossly inadequate": "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").   *See also Cotton*, 559 F.3d at 1130; *Columbus Drywall*, 258 F.R.D. at 559.

Here, based on the employment data provided and expert analysis conducted

---

[7] Courts in wage and hour cases frequently approve settlements providing a fraction of the maximum recovery. *See, e.g.*, *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 673-674 (S.D. Fla. 2006) ($6,250,000 fund reasonable for class of 40,000 employees – or $156.25 per employee; participating class members will receive award based on length of service); *Chiaramonte v. Pitney Bowes, Inc.*, 2008 WL 510765, at *6 (S.D.Cal. Feb. 25, 2008) (approving settlement where parties provided no estimate of potential recovery; noting that funds that are "only a fraction of the potential recovery" have been approved; citing approval of 6% recovery); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (settlement assuring immediate payment of a "significant amount of compensation for class members" not "grossly inadequate" even though representing only "a fraction of the best possible recovery"). In *Gilliam*, the average award to the class members was about $1,100, while the average award for members employed throughout the six-and-half-year class period in that case was about $2,000.  These awards were determined to be a substantial benefit supporting final settlement approval.  *See also Vasquez*, 670 F. Supp. at 1125 (average individual payment of $1,000); *Collins*, 274 F.R.D. at 302 ($685 per class member); *Duran*, 2011 U.S. Dist. LEXIS 134363, at *11 ("several hundred or even over a thousand dollars, depending on the amount of hours worked").  Here, the benefits to the class members are significantly more favorable.

in *Perkins* and *Luque*, Plaintiffs estimate that the settlement represents roughly one-third of their reasonable maximum recovery.  This estimate assumes that Plaintiffs would win the fluctuating workweek issue and would receive liquidated (double) damages.  With the various factual and legal disputes in the case, Plaintiffs believe that the settlement represents anywhere from approximately 10% to over 200% of the range of possible damages verdicts should they prevail on liability.[8]

In light of the high degree of risk and uncertainty in further litigation, the recovery for the *Lawson* Plaintiffs is certainly fair and reasonable. *See, e.g., Morales*, 2011 U.S. Dist. LEXIS 130604, at *28-29; *Clesceri*, 2011 U.S. Dist. LEXIS 11676, at *26-27; *Cervantez*, 2010 U.S. Dist. LEXIS 78342, at *12; *Chu*, 2011 U.S. Dist. LEXIS 15821 (granting final settlement approval where size of awards would be substantial and litigation risk was significant).  Given the length and difficulty of the process needed to reach the settlement result, "there is little reason to believe that further settlement negotiations would result in any additional settlement funds." *Wright v. Stern*, 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008). Moreover: "There is simply no assurance that more years of litigation would result in any greater recovery." *Id*. at 339.  *See also Columbus Drywall*, 258 F.R.D. at 559-60 (although a small fraction of the potential recovery at trial, "the settlement offers

---

[8] In *Luque*, Defendants' damages expert calculated the larger California FLSA class' damages at $7,558,948 assuming 12 hours of unpaid overtime per employee per week and all other damages issues resolved in favor of the company.  The *Luque* settlement of $18,920,325 is approximately 2.5 times this figure.  Since the *Lawson* and *Luque* settlements are based on similar methodology this data is informative.

plaintiffs the opportunity to obtain an immediate, certain recovery of $ 37.25 million. Plaintiffs do not have any guarantee that they will receive a larger recovery from the Settling Defendants were they to forego the settlement offer."); *Officers for Justice*, 688 F.2d at 629 ("There is simply no indication in the record, nor a showing by [objector] on this appeal, that any judgment reached after a full trial would be sufficiently large, when discounted, to reward the class members for their patience.")

### 6. *Experienced Counsel Endorse the Settlement*

Plaintiffs' counsel Sanford Heisler is very experienced in complex class litigation, particularly in wage and hour cases, and has been repeatedly recognized for its zealous representation.[9]  Similarly, defense counsel Paul Hastings is a firm with a nation-wide reputation for high-caliber advocacy.

Given the experience and high legal standing of both parties' attorneys, counsels' endorsement of the settlement as fair, reasonable, and adequate in light of the risks of further litigation and recommendation that it be approved in the best

---

[9] *See also e.g.*, *In re Novartis Wage & Hour Litig.*, preliminary approval order (Ex. B); final approval order (Ex. C); *Nash v. CVS Caremark Corp.*, 2011 U.S. Dist. LEXIS 145053, at *12 (D.R.I. Dec. 9, 2011); *Stiller v. Costco*, 2010 U.S. Dist. LEXIS 140297, at *18-19 (S.D. Cal. Dec. 13, 2010); *Velez v. Novartis Pharms. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *46-47, 62-63 (S.D.N.Y. Nov. 30, 2010); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 U.S. Dist. LEXIS 79679, at *4, 16-17 (S.D.N.Y. Aug. 5, 2010); *Wooten v. Smith & Nephew, Inc.*, 2009 U.S. Dist. LEXIS 130317, at *4 (W.D. Tenn. Nov. 25, 2009); *Perkins*, 669 F. Supp. 2d at 222; *Hernandez v. C&S Wholesale Grocers, Inc.*, 2008 U.S. Dist. LEXIS 118666 (S.D.N.Y. July 30, 2008); *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 268-69 (S.D.N.Y. 2007).

interests of the class "is entitled to significant weight, and weighs in favor of settlement." *E.g. Morales*, 2011 U.S. Dist. LEXIS 130604 at *30-31; *Clesceri*, 2011 U.S. Dist. LEXIS 11676, at *28-29; *LaParne*, 2010 U.S. Dist. LEXIS 131029, at *14; *Chu*, 2011 U.S. Dist. LEXIS 15821, at *11; *Lo*, 2011 U.S. Dist. LEXIS144490, at *18-19; *Andrews Farms*, 2011 U.S. Dist. LEXIS 82409, at *30.

## II.     The Court Should Approve the Notice to the Class Members

The proposed Class Notice is more than adequate. Fed. R. Civ. P. 23(c)(2)(B), which is more stringent than the FLSA, requires only that class members receive the "best notice practical under the circumstances." The method and content of the notice should be designed to give class members "information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (citations omitted). *See also Thompson v. Metro. Life Ins. Co*., 216 F.R.D. 55, 67 (S.D.N.Y. 2003) ("Although no rigid standards govern the contents of notice to class members, the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.")) Federal courts have generally held that an individual mailing to each class member's last known address is a sufficient form of notice. *See, e.g.,*

*White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994).

Here, the proposed notice will be sent to the class members via first-class mail. The notice fully apprises the Plaintiffs of the terms of the settlement and of their options to participate or to effectively opt-out by electing not to submit a claim form. The mailing will include the release and other paperwork that class members must sign and return in order to participate in the settlement. Accordingly, the detailed information in the notice is more than adequate to put Plaintiffs on notice of the proposed settlement and is well within the requirements of law. Courts have approved class notices even when they provided only general information. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 52713, at *9 (S.D.N.Y. May 17, 2011). The proposed notice far exceeds this bare minimum and fully complies with the Rule. Judge Breyer approved a substantially similar notice in *Luque* under the more stringent Rule 23 standard.

## CONCLUSION

The settlement, which was achieved through extensive arm's-length negotiations spanning more than six months, represents a reasonable resolution of protracted litigation. Accordingly, this Court should: (1) approve the proposed Settlement Agreement and Release; and (2) approve the proposed settlement

notice.

Respectfully and jointly submitted,


By:   /s/ David Sanford                          By:   /s/  William C. Barker
David Sanford                                    William C. Barker
DC Bar No. 457933                                Georgia Bar No. 037727
dsanford@sanfordheisler.com                      PAUL HASTINGS, LLP
SANFORD HEISLER, LLP                             1170 Peachtree Street, N.E.
1666 Connecticut Avenue NW                       Suite 100
Suite 300                                        Atlanta, GA  30309
Washington, DC 20009                             Telephone:  (404) 815-2400
Telephone: (202) 499-5200                        Facsimile:   (404) 815-2424
Facsimile: (202) 499-5199
                                                 Attorneys for Defendant
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleyklein.com
BUCKLEY & KLEIN, LLP
Promenade II, Suite 900
1230 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101


Edmond Clark
eclarkmadisonlaw@aol.com
Law Office of Edmond Clark
83 Scotland Avenue
Madison, Connecticut 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734


Attorneys for Plaintiffs
Date: April 5, 2013
        By their signatures above, counsel for the parties represent that, pursuant to
Local Rules 5.1B and 7.1D, this motion and memorandum were prepared in the
font of Times New Roman, 14 point.